IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DREW T. ASBURY,                           3:14-cv-01425-BR

          Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

          Defendant.


**KAREN STOLZBERG**
11830 S.W. Kerr Parkway, #315
Lake Oswego, OR 97035
(503) 251-0707

          Attorney for Plaintiff

**BILLY J. WILLIAMS**
Acting United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

**DAVID MORADO**
Regional Chief Counsel
**JEFFREY E. STAPLES**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, WA 98104
(206) 615-3706

          Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

Plaintiff Drew T. Asbury seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a thorough review of the record, the Court **AFFIRMS** the final decision of the Commissioner.


## ADMINISTRATIVE HISTORY

Plaintiff filed his application for DIB on June 1, 2010. Tr. 288.[1] His applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held an initial hearing on December 13, 2012, and a supplemental hearing on April 4, 2013. Tr. 4, 47. Plaintiff was represented by an attorney at both hearings. Plaintiff primarily testified at the initial December 13, 2012, hearing; Harvey Alpern, M.D., a medical expert (ME), testified at the April 4, 2013, supplemental hearing; and a vocational expert (VE) also testified at the April 4, 2013, supplemental hearing. Tr. 4, 47.

---

[1] Citations to the official transcript of record filed by the Commissioner on January 29, 2015, are referred to as "Tr."

The ALJ issued a decision on April 15, 2013, in which he found Plaintiff is not entitled to benefits. Tr. 116-25. That decision became the final decision of the Commissioner on July 21, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 95-99. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on November 20, 1977; was 35 years old on the date of the initial hearing; and has a twelfth-grade education. Tr. 288, 306. Plaintiff has prior relevant work experience as a grocery clerk, merchandising shelf-stocker, and assistant grocery manager. Tr. 124.

Plaintiff alleges disability since February 28, 2010, due to "chronic lower limb pain," chronic back pain, heart disease, hypertension, "severe anxiety," "stress," and plantar fasciitis. Tr. 288, 305. Plaintiff's date last insured was December 31, 2014. Tr. 301.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 118-24.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser,* 648

F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity.  The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule." SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis when the ALJ is determining whether a claimant can still
work despite severe medical impairments.  An improper evaluation
of the claimant's ability to perform specific work-related
functions "could make the difference between a finding of
'disabled' and 'not disabled.'" SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser,* 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set

forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since February 28, 2010, his alleged onset date.  Tr. 118.

At Step Two the ALJ found Plaintiff has venous insufficiency and foot pain.  Tr. 118-20.  The ALJ concluded Plaintiff's "history of cardiac catherization with no ongoing ischemia" and "reactive stress with panic attacks and depression" are nonsevere impairments.  Tr. 118-20.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 120-21.  In his assessment of Plaintiff's RFC the ALJ found Plaintiff has the functional capacity to perform "less than the full range of light work" that restricts Plaintiff to lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing and walking no more than two to four hours in an eight-hour workday with the option to change positions on an hourly basis; not performing any work around hazards such as unprotected heights or machinery with exposed moving parts; and not having more than occasional interaction with the general

public.  Tr. 121-24.

At Step Four the ALJ found Plaintiff is unable to perform his past relevant work as a grocery clerk, merchandising shelf-stocker, or assistant grocery manager.  Tr. 124.

At Step Five, however, the ALJ found Plaintiff is capable of performing other work that exists in significant numbers in the national economy, including work as an optical-goods assembler, a "wire worker semi-conductor," and a photocopy-machine operator. Tr. 124-25.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 125.

## **DISCUSSION**

Plaintiff contends the Appeals Council erred when it declined to incorporate into the administrative record medical evidence that was dated after the ALJ's decision.  In addition, Plaintiff contends the ALJ erred when he (1) found at Step Three that Plaintiff's lower-extremity conditions in combination with his anxiety did not equal Listing 4.11(B); (2) discredited Plaintiff's testimony; (3) discredited the opinion of Jennifer Backman, M.D., one of Plaintiff's primary-care providers; (4) discredited the opinion of Frederick Grossman, Ph.D., Plaintiff's mental-health treatment provider; (5) credited the testimony of Dr. Alpern, the ME who testified at the supplemental hearing; and (6) based on the above errors, failed to formulate

9 - OPINION AND ORDER

an assessment of Plaintiff's RFC that was supported by
substantial evidence in the record.

## I.  Incorporation of Evidence Submitted to the Appeals Council into the Record

Plaintiff first contends the Appeals Council erred when it
declined to incorporate into the administrative record certain
medical records submitted by Plaintiff that were dated after the
ALJ's decision.

"During the Appeals Council review process, a claimant may
submit 'any new and material evidence . . . which relates to the
period on or before the date of the administrative law judge
hearing decision.'"  *Bales v. Comm'r Soc. Sec. Admin.*, No. 3:14-
cv-01553-HZ, 2015 WL 5686884, at *3 (D. Or. Sept. 25,
2015)(quoting 20 C.F.R. § 404.976(b)(1)).  "If new and material
evidence is submitted, the Appeals Council shall consider the
additional evidence only where it relates to the period on or
before the date of the administrative law judge hearing
decision."  20 C.F.R. § 404.970(b).  "[W]hen the Appeals Council
considers new evidence in deciding whether to review a decision
of the ALJ, that evidence becomes part of the administrative
record, which the district court must consider when reviewing the
Commissioner's final decision for substantial evidence."  *Brewes
v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

On the other hand, when "the Appeals Council determines that
the new evidence falls outside of the relevant time period, it

has not 'considered' that evidence as that term is used in the Social Security regulations." *Bales*, 2015 WL 5686884, at *3. *See also* 20 C.F.R. § 404.970(b)("If you submit evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence.").  "The rejected evidence does not become part of the administrative record." *Bales*, 2015 WL 5686884, at *3 (citing *Barrington v. Colvin*, No. 1:13-cv-01512-JO, 2014 WL 5342371, at *8 (D. Or. Oct. 20, 2014)).

In this case Plaintiff submitted a substantial amount of new evidence to the Appeals Council.  The evidence submitted by Plaintiff fell generally into three categories:  (1) general information concerning Plaintiff's alleged impairments; (2) medical records dated before the ALJ's decision; and (3) medical records dated after the ALJ's decision.  *See* Tr. 724-819; Pl.'s Br. (#16) App. A.  The Appeals Council considered and incorporated into the administrative record the general information concerning Plaintiff's alleged impairments and Plaintiff's medical records that were dated before the ALJ's decision.  Tr. 95-96.  The Appeals Council, however, determined the medical records dated after the ALJ's decision were "about a later time" and, accordingly, returned that evidence to Plaintiff with an explanation that Plaintiff was required to file a new

application if he wanted the Commissioner to consider such evidence.  Tr. 96.

The Appeals Council, therefore, complied with 20 C.F.R. § 404.970(b), considered those records that related to the time before the ALJ issued his decision and incorporated those records into the administrative record, and rejected the evidence dated after the ALJ issued his decision because they did not relate to the period before the ALJ issued his decision.  *See Bales*, 2015 WL 5686884, at *3.  Accordingly, on this record the Court concludes the Appeals Council did not err when it declined to incorporate Plaintiff's post-decision medical records into the administrative record.

In the alternative, Plaintiff requests this Court to remand this case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).  The Court may only remand a case pursuant to sentence six when "the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Plaintiff has the burden of demonstrating materiality and good cause.  *Bales*, 2015 WL 5686884, at *4.  "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier."  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  *See also Bales*, 2015 WL 5686884, at *4.

12 - OPINION AND ORDER

"'Merely obtaining a more favorable report after an adverse
decision is insufficient to warrant a sentence six remand.'"
*Bales*, 2015 WL 5686884, at *4 (quoting *Gibb v. Comm'r Soc. Sec.
Admin.*, No. 3:09-cv-00533-HA, 2010 WL 988467, at *3 (D. Or. Mar.
15, 2010)).

Plaintiff contends medical records from Daniel W.
Isenbarger, M.D., are material because Dr. Isenbarger
"definitively diagnosed [Plaintiff's] leg issues, and gave
[Plaintiff] the first effective treatment for them."
Dr. Isenbarger also opined Plaintiff's chronic venous
insufficiency meets the criteria of Listing 4.11(B).  Pl.'s Br.
(#16-6) App. A at 3.  Although Dr. Isenbarger's opinion that
Plaintiff's chronic venous insufficiency meets the criteria of
Listing 4.11(b) may satisfy the materiality requirement for a
remand pursuant to sentence six, Plaintiff has not made any
showing of good cause as to why Dr. Isenbarger's opinion could
not have been obtained earlier.

Accordingly, on this record the Court denies Plaintiff's
request for a remand to the Commissioner pursuant to sentence
six, 42 U.S.C. § 405(g).

**II.  Step Three**

Plaintiff next contends the ALJ erred at Step Three when he
found Plaintiff's medical and psychological impairments did not
in combination equal the criteria of Listing 4.11(B).

13 - OPINION AND ORDER

The ALJ must determine at Step Three whether a claimant's impairments meet or equal an impairment in the Listing of Impairments.  The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment.  *See* 20 C.F.R. § 404.1525(c).  "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to her claim." *Taylor v. Colvin*, No. 6:12-cv-00225-BR, 2013 WL 1914400, at *5 (D. Or. May 8, 2013)(citing 20 C.F.R. § 404.1525).  "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Taylor*,  2013 WL 1914400, at *5 (quoting 20 C.F.R. § 404.1525(a)).

Listing 4.11(B) provides

> Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and . . . :

> * * *

> B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Pt. 404, Subpt. P, App. 1.  Plaintiff contends he meets the criteria of Listing 4.11(B) because the medical evidence establishes Plaintiff has superficial varicosities and stasis dermatitis and that Plaintiff's conditions in combination

14 - OPINION AND ORDER

otherwise equal the Listing.

As the ME testified, however, there is not any evidence in the record that demonstrates Plaintiff has suffered from recurrent or persistent ulceration.  Tr. 28.  Plaintiff, therefore, has failed to establish that his conditions in combination equal Listing 4.11(B).

Accordingly, on this record the Court concludes the ALJ did not err by failing to find Plaintiff's impairments equal the criteria of Listing 4.11(B).

## III. Plaintiff's Testimony

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). *See also Delgado v. Comm'r Soc. Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the

claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the original hearing on December 13, 2012, Plaintiff testified he left his prior employment at Fred Meyer after allegations of harassment were brought against him. Tr. 54. Shortly thereafter, however, Plaintiff stated his physician informed him that his heart condition made it "too dangerous" for him to return to work, and he was never again medically cleared to return to work. Tr. 54-55, 57.

Plaintiff stated his foot and leg conditions cause him to suffer "continuous pain," and pain radiates from his ankles into his hips and spine if he sits for more than 45 minutes. Tr. 59. Plaintiff stated sitting causes his feet to turn "black and blue" from blood pooling and standing for extended periods causes his feet to turn white from lack of blood flow. Tr. 59. Plaintiff reported the pain caused by standing for 20 to 30 minutes is "so incredibly brutal that [he] will start throwing up." Tr. 71. After sitting for 20 minutes, Plaintiff stated his "lower spine

16 - OPINION AND ORDER

starts locking up" and he must stretch and perform calisthenics for 10 or 15 minutes to relieve the symptoms.  Tr. 71-72. Plaintiff testified his foot and leg conditions began affecting him 15 years before the hearing and that the symptoms had progressively worsened.  Tr. 60.  Plaintiff testified he had a "nuclear exam" earlier in 2012 that showed "that all of the multiple partial blockages around [his] heart are now blockages." Tr. 64.

Plaintiff also testified he suffers from panic attacks "a couple times a day" that last for between 45 minutes and two hours.  Tr. 67-68.  In addition, Plaintiff reported his medications cause memory problems, and, as a result, Plaintiff "can't remember a conversation from 20 minutes ago."  Tr. 68-69.

Plaintiff stated he performs upper-body exercises at the gym two days per week, but all of his exercises are performed in a seated position.  Tr. 75.  Plaintiff stated he has isolated himself as much as possible and cannot go out other than to the gym or a brief trip to the grocery store because of his memory limitations.  Tr. 78.

In his Adult Function Report dated June 19, 2010, Plaintiff stated he "[c]annot stand or walk longer than 5-10 minutes" and "cannot function at all without heavy narcotics."  Tr. 330. Plaintiff reported he requires reminders from his family to take care of daily activities and often forgets to take some

17 - OPINION AND ORDER

medications.  Tr. 332.  Plaintiff stated he can cook simple meals and can perform "5-10 minutes" of laundry, feed his dogs, wash dishes, and do light dusting.  Tr. 332-33.  Plaintiff reported his hobbies are watching television, using the internet, playing video games, and reading, but his memory problems have made comprehension of these activities more difficult.  Tr. 334.

Plaintiff indicated his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, remember, complete tasks, concentrate, understand, and follow instructions.  Tr. 335.  Plaintiff reported he can only pay attention for two to five minutes and has difficulty following both written and verbal instructions.  Tr. 335.

The ALJ discredited Plaintiff's testimony because Plaintiff left his employment immediately preceding his alleged onset date of disability for nondisability reasons, Plaintiff delivered his testimony in a dramatic fashion and appeared at the hearing in a manner inconsistent with his alleged limitations, Plaintiff made statements inconsistent with the medical evidence, and Plaintiff's activities of daily living are inconsistent with his reported limitations.

After a thorough review of the record, the Court concludes the ALJ cited clear and convincing reasons for rejecting Plaintiff's testimony.  The ALJ is correct that there are several inconsistencies between the medical record and Plaintiff's

testimony.  For example, despite testifying in 2012 that he had a "nuclear exam" that revealed "multiple" blockages around his heart, the medical record indicates Plaintiff's 2012 nuclear stress test was "stable."  Tr. 64, 65, 666.  In addition, contrary to Plaintiff's testimony that he was never medically cleared to return to work after he left Fred Meyer, Plaintiff told a worker's compensation examiner that he was "welcomed back to work with a note from his physician but apparently decided not to return to work," and in December 2010 Plaintiff's physician stated Plaintiff was capable of light or sedentary work.  Tr. 55, 57, 280, 558-59.  Moreover, despite Plaintiff's allegations of significant memory and concentration limitations in his June 2010 Adult Function Report, it was repeatedly noted in contemporaneous medical records that Plaintiff exhibited normal memory and concentration.  *See* Tr. 494, 519, 575.  The ALJ also properly discredited Plaintiff's testimony because Plaintiff left his job at Fred Meyer for nondisability-related reasons.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  *See also Page v. Colvin*, No. 14-35243, 2015 WL 6153597, at *1 (9th Cir. Oct. 20, 2015).

Accordingly, on this record the Court concludes the ALJ did not err when he discredited Plaintiff's testimony because he provided legally sufficient reasons supported by substantial evidence for doing so.

**IV.   The Medical Testimony of Drs. Backman, Grossman, and Alpern**

Plaintiff contends the ALJ improperly rejected the opinions of Dr. Backman and Dr. Grossman while improperly crediting the testimony of Dr. Alpern, the ME who testified at the supplemental hearing.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10-36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). *See also Garrison v. Colvin*, No. 12-CV-15103, 2014 WL 3397218, at *13 (9th Cir. 2014).  "The opinion of a nonexamining physician cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831).  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence.  *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  *See also Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

### A.   Dr. Backman's Opinion

On December 13, 2012, Dr. Backman, one of Plaintiff's primary-care providers, submitted a letter in which she stated Plaintiff had been diagnosed with peripheral arterial disease and a "bilateral lower extremity neuropathic process," which cause pain, numbness, tingling, and weakness in his legs.  Tr. 705. Dr. Backman opined Plaintiff would be required to change his position every five to fifteen minutes.  Tr. 705.  Dr. Backman also reported Plaintiff had significant low-back pain due to degenerative disc disease and that Plaintiff's "back looks like

the back of a much older man." Tr. 705.  Dr. Backman opined
Plaintiff exhibited anxiety as well as limited concentration
caused by his physical limitations.  Tr. 705-06.

The ALJ discredited Dr. Backman's opinion because
Dr. Backman's letter mirrored Plaintiff's discredited testimony;
Dr. Backman stated Plaintiff had conditions, including peripheral
artery disease and degenerative disc disease, that were not
supported by the medical record; and Dr. Backman's opinion was
inconsistent with her own treatment notes and the medical record.

Because Dr. Backman's opinion was contradicted by the
testimony of Dr. Alpern, the ME, the ALJ was required to provide
specific and legitimate reasons for rejecting Dr. Backman's
opinion.  After reviewing the record, the Court concludes the ALJ
cited legally sufficient reasons to discredit Dr. Backman's
opinion.  For example, as the ALJ noted, Dr. Backman's opinion
that Plaintiff has low-back pain due to degenerative disc disease
and his "back looks like that of a much older man" is
contradicted by an MRI on July 16, 2012, that reflected
Plaintiff's back was "for the most part normal, without any
significant degenerative findings."  Tr. 696.  Moreover the ALJ
is correct that Plaintiff did not receive a diagnosis of
peripheral arterial disease.  To the contrary, on May 17, 2012,
M. Darren Mitchell, M.D., a cardiologist to whom Dr. Backman
referred Plaintiff, noted Plaintiff's lower-extremity condition

"certainly does not appear to be an arterial issue."  Tr. 627.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited Dr. Backman's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence for doing so.

**B.   Dr. Grossman's Opinion**

On February 19, 2013, Dr. Grossman submitted a letter and "Medical Source Statement" regarding Plaintiff's psychological limitations.  Dr. Grossman reported Plaintiff's physical problems caused him to have psychological and emotional limitations that resulted in "difficulty in concentrating and functioning." Tr. 719.  Dr. Grossman reported Plaintiff is "extremely anxious and depressed" and that the stress caused by his physical conditions make it "impossible for him to concentrate or remember" important issues.  Tr. 720.  When asked to identify Plaintiff's degree of limitation in several categories, Dr. Grossman provided "yes" or "no" answers that did not specify any degree of limitations.  Tr. 721-22.  Dr. Grossman, however, indicated Plaintiff had "extreme" limitations in his activities of daily living and his ability to maintain concentration, persistence, and pace.  Tr. 722-23.

The ALJ discredited Dr. Grossman's opinion because Dr. Grossman's treatment notes were disorganized and difficult to read; Dr. Grossman's assessment is inconsistent with an

23 - OPINION AND ORDER

April 2010 psychological evaluation that indicated Plaintiff did
not have any psychiatric limitations; and the record did not
support Dr. Grossman's findings of extreme limitations in
Plaintiff's activities of daily living and concentration,
persistence, and pace.  In addition, Dr. Grossman's evaluation of
Plaintiff's mental limitations was inconsistent with the April
2010 evaluation by Ronald N. Turco, M.D., who found that
Plaintiff did not have any psychological limitations.  The ALJ,
therefore, was required to provide specific and legitimate
reasons for rejecting Dr. Grossman's testimony.

    After a thorough review of the record, the Court concludes
the ALJ provided legally sufficient reasons to discredit
Dr. Grossman's opinion.  The ALJ was correct when he found
Dr. Grossman's treatment notes were highly disorganized.
Dr. Grossman's treatment notes consist of six pages of unsigned,
largely illegible notes written on plain white paper (Tr. 713-
18), and the disorganization of Dr. Grossman's notes diminished
the ALJ's ability to consider Dr. Grossman's often conclusory
opinions in the context of Plaintiff's treatment record.
Moreover, the ALJ is correct that Dr. Grossman's opinion
regarding Plaintiff's "extreme" limitations in activities of
daily living and his concentration, persistence, and pace is
inconsistent with the rest of the medical record.

    Accordingly, on this record the Court concludes the ALJ did

not err when he rejected Dr. Grossman's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence for doing so.

**C.    Dr. Alpern's Opinion**

Plaintiff contends the ALJ erred when he credited the opinion of Dr. Alpern, the ME.  Plaintiff specifically argues the ALJ should not have credited Dr. Alpern's testimony because Dr. Alpern was "confused" during his testimony and his statements contained factual errors.

Plaintiff does not cite any authority for the proposition that the ALJ is required to provide a specific justification for crediting the testimony of a medical or psychological expert. Accordingly, the Court will only find error in the ALJ's decision to credit Dr. Alpern's testimony fully if that testimony is not "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *See Molina*, 674 F.3d. at 1110-11 (quoting *Valentine*, 574 F.3d at 690). *See also Seiber v. Colvin*, No. 3:14-cv-01149-BR, 2015 WL 4994195, at *4 (D. Or. Aug. 19, 2015).

Dr. Alpern testified at the April 4, 2013, supplemental hearing after reviewing the medical record.  Plaintiff's argument that Dr. Alpern was "confused" is misplaced.  Although Dr. Alpern noted the medical record was "confusing" as to the nature and seriousness of Plaintiff's lower-extremity limitations,

Dr. Alpern's testimony was sufficiently clear and consistent with the record as a whole to render it "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *See Molina*, 674 F.3d. at 1110-11 (quoting *Valentine*, 574 F.3d at 690).

Accordingly, on this record the Court concludes the ALJ did not err when he relied on the testimony of Dr. Alpern.

Because the Court concludes the ALJ properly considered Plaintiff's testimony and the testimony of the medical experts, the Court rejects Plaintiff's contention that the ALJ's assessment of Plaintiff's RFC was erroneous.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 28th day of October, 2015.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER